# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### WESTERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
OCT 3 1 2014
BY _____ ARTHUR JOHNSTON
DEPUTY

**ROBERT D. WALKER, Individually and as**
**Personal Representative on Behalf of the**
**Wrongful Death Beneficiaries of**
**KENDRICK LANELL WALKER**

                                                                        **PLAINTIFF**

**v.**                           CIVIL ACTION NO. _5:14 cv 98 DCB-m TP_

**MANAGEMENT & TRAINING CORPORATION**
**and JOHN AND JANE DOES 1-100**                         **DEFENDANTS**

## COMPLAINT

### *Jury Trial Demanded*

1.      This complaint is brought by Robert D. Walker (hereinafter, "Plaintiff"), Individually and as Personal Representative on behalf of the wrongful death beneficiaries of Kendrick Lanell Walker (hereinafter, "Decedent"), by and through undersigned counsel, against Management & Training Corporation and John and Jane Does 1-100.

## JURISDICTION AND VENUE

2.      Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. 1983 as well as the 8th and 14th Amendments to the United States Constitution.  Subject Matter Jurisdiction is also appropriate based upon diversity of citizenship as the Plaintiff and Defendant are citizens of different states and the claim is in excess of $75,000.00.  28 U.S.C. § 1332.  The Court also has pendent jurisdiction over the Plaintiff's state causes of action.

3.      Venue is appropriate in this Court as all acts and/or omissions occurred in Wilkinson County, Mississippi, which is located within the Southern District of the United States District Court, Western Division.

**PARTIES**

4.      Plaintiff, Robert D. Walker, is an adult resident citizen of Amite County, Mississippi. His current residence address is 5129 Berwick Cassel Road, Gloster, Amite County, Mississippi 39638. Plaintiff, the natural brother of the Decedent, brings this action individually and on behalf of the only other surviving heir/wrongful death beneficiary of Decedent, Jonathan L. Griffin, natural brother, who's current residence address is 4752 Price Lane, Liberty, Amite County, Mississippi 39645.

5.      Decedent was, at all times material to this Complaint, incarcerated at Wilkinson County Correctional Facility (hereinafter, "WCCF"). Substantial acts, omissions, and events that caused the Decedent's death took place in Wilkinson County. At the time of the incident which gives rise to this Complaint, Decedent was a 33 year old citizen of the State of Mississippi, and a prisoner incarcerated at WCCF. Plaintiff, as Personal Representative, brings this action pursuant to Mississippi Code Ann. § 11-7-13 (1972), the Wrongful Death Statute.

6.      Defendant, Management & Training Corporation (hereinafter, "MTC"), a national for-profit prison operator incorporated and existing in the State of Utah, was awarded a five (5) year contract by the Mississippi Department of Corrections, ("MDOC") in May, 2013 for the management and oversight of the prison's daily operations, under which it has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards. MTC's 5,545 employee Corrections division operates 24 correctional facilities throughout the United States, having seventeen (17) contracts with state correctional departments and seven (7) with federal correctional agencies. Since MTC's taking control of WCCF's daily operations on July 1, 2013, the acts, omissions and events giving rise to Plaintiff's complaint continued under its new management. MTC's principal place of business is located at 500 North Marketplace Drive, Centerville, Utah 84014, and is subject to the in personam jurisdiction of the Court by

2

service of process upon its appointed registered agent, CT Corporation System, located at 645 Lakeland East Drive, Suite 101, Flowood, Rankin County, Mississippi 39232.

7.     The Plaintiff is ignorant as to the identities of John and Jane Does 1-100 who are unknown MTC officers, employees, agents, and or servants. Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of each of the other Defendants herein, and were acting with the permission and consent within the course and scope of said agency and employment.

## FACTS

8.     On May 25, 2014, Kendrick Walker was stabbed, beaten, and ultimately killed while housed in "F" Pod at WCCF.  According to the MDOC Criminal Investigation Division ("CID)" report, the Decedent requested and was given an extra food tray by one of the guards. This meant that one of the inmates was temporarily without a food tray.  The other inmates happened to be affiliated with the Gangster Disciples, a notorious Security Threat Group ("STG") within MDOC system known for violence, contraband and the ability to bribe guards and other employees.  The Gangster Disciples decided to take revenge on the Decedent for taking an extra food tray.  Upon information and belief, correctional officers were aware of the plan and assisted, condoned it, or looked the other way.   In any event, the Defendant's employees acted with negligence, gross negligence and/or deliberate indifference to the safety and well-being of the Decedent.  On the date of the incident, several inmates were walking around "F" pod unsupervised and carrying large weapons.  The video surveillance does not show any guards on the floor.  The Decedent was approached as he was sitting alone at a table in the

common area minding his own business.  The Decedent was first struck by an inmate with a broom handle and then stabbed in the back with a homemade weapon ("shank").  Once down on the ground, another inmate, Adrian Williams, attempted to come to Decedent's aid, yet he was immediately attacked by other inmates, himself, being stabbed multiple times by shanks, ultimately falling to the ground, where he lay motionless.

9.     As the attackers' attention focused on Inmate Williams, Decedent managed to get up from where he had fallen and made his way to the top of the shower area.  Once there, he jumped onto the top tier and locked himself inside an unoccupied cell, where he remained for approximately 11 minutes.  During this 11 minute time period, MTC's employees failed to come to his aid or attempt to quell the riot.  The surveillance video shows one inmate walking over to the control room several times and it appears that he is communicating with the guards in the control room.  Eventually the door was opened, forcing the Decedent to exit while fighting off numerous assailants.

10.    The MDOC Criminal Investigation Division ("CID") indicated that one of the guards in the watch tower may have been affiliated with the Gangster Disciples who were attacking the Decedent and may have opened the cell door.  Several inmates indicated that they heard the cell door, in which the Decedent was locked, "buzz".  It is not clear if this occurred, but two of the three guards in the watch tower were subsequently fired due to unrelated misconduct which centered around aiding and assisting gang members at WCCF.  Regardless, the Decedent's cell door was opened either by a guard or because inmates at WCCF have compromised the locks in most, if not all, of the cell doors.  The compromised cell doors are well-known to MTC employees and agents.

11.    After the cell door opened and the attack continued, the Decedent somehow made his way halfway down the stairs while fighting off stabbing blows from another attacker before

4

falling over the railing and onto the floor below. Incredibly, he got up and went into the shower area, where he backed into a shower while continuing to fight off the attack of several inmates; however, he was quickly forced out of the shower, at which time he was stabbed with a broom handle brandished by one inmate, as well as numerous shanks by others, and yet, was also struck with the handle of a broom as well as the fists of two other inmates.

12.    At this point, another inmate threw a microwave onto Decedent. He managed to crawl underneath the staircase from which he had fallen earlier, where he was, yet again, assaulted by an onslaught of inmates. Eventually, the inmates left him, apparently satisfied that they had completed their task- but not until two returned for a final pass, one stomping on his body, and the other urinating on him.

13.    It was not until after the incident had concluded that any MTC/WCCF personnel arrived on scene (inside "F" Pod); prior to Major Gabriel Walker, Chief of Security's arrival, one inmate took it upon himself to shower, cleansing himself of the blood and gore on his person, while other inmates went about cleaning up the area, destroying and discarding valuable evidence. Even more disturbing, Decedent's body lay unattended for approximately 41 minutes after Major Walker's initial arrival in the Pod, the sole attention provided him being a brief glance by Major Walker before exiting the area.

14.    Surveillance video of the "Sally Port Area" (secure room with access doors to "F" Pod, "G" Pod, the Control Tower for both Pods and access to the main hallway) indicates that the first MTC/WCCF personnel to respond to the Sally Port Area, all of whom arrived approximately 1 minute after the incident began, took no action whatsoever to stop the attack, to protect Decedent or any other inmate from being assaulted, nor did they actually venture from the "safety" of the Sally Port Area into "F" Pod. While these officers stood by, watching, an inmate escaped "F" Pod into the Sally Port area, severely injured and bleeding profusely, and fell

to the floor.  While it appears that one officer called for what is assumed to be medical personnel, he was not provided any assistance until medical personnel arrived with a gurney almost 4 minutes later.

15.     Decedent's autopsy indicated that he incurred 81 stab wounds to his head, upper extremities and torso; he sustained injuries to the lungs, liver, kidney and soft tissue, and had blood in his pleural membrane in addition to a fractured mandible and subarachnoid hemorrhages.

### CONDITIONS AT WCCF

16.     Prior to the Decedent's death, WCCF was besieged with gang violence and contraband.  The gang population was so out of control that gang members essentially controlled the prison.  WCCF Guards and other staff members assisted gang members by bringing in contraband.  In return, gang members would pay the WCCF employees via "green dot cards".  In addition, some WCCF employees were affiliated with gang members and afforded them favorable treatment and even aided and abetted the gang members in their illicit behavior.  Gang members were selling drugs, cell phones and other contraband with the assistance and/or approval of MTC employees.  The introduction of this contraband into the prison contributed to the atmosphere of violence in existence at the prison.

17.     It is well documented that cell doors in most all of the units at the facility can easily be "rigged" to remain unlocked when shut—if the locks are operational in the first place— allowing inmates to leave their cells at any time and to enter the cells of others, resulting in many assaults.  There have been numerous incident reports regarding assaults whereby inmates escaped or entered other cells through "rigged," or non-operational doors.  Defendant has failed to take adequate measures to ensure that the defective doors are replaced and has failed to supervise officers adequately to ensure that they routinely and effectively examine doors to

6

check for rigging.

18.     MTC supervisors and employees, including guards, were aware that the vast majority of prisoners had altered the locks on their doors which allowed the prisoners to open their cell doors whenever they chose to.  Upon information and belief, surveillance video exists showing prisoners moving around the prison at night when they were required to be locked down.  MTC employees simply turned a blind eye to such actions, either because they were being paid to "look the other way" or simply did not care.  MTC and its employees' actions constituted negligence, gross negligence and deliberate indifference to the safety of the prisoners, including the Decedent.

19.     Weapons, such as homemade knives, were readily available at WCCF.  Prisoners would utilize materials in the prison or get material smuggled in from guards.  Some prisoners had homemade knives which were the size of swords.

20.     MTC officials and employees were aware of the prevalence of weapons at the prison.  Guards who were being paid by gang members simply looked the other way.  Others did not care or did not report the incidents due to the fear of gang retaliation.  Regardless, MTC officials failed to take proper precautions and safety measures to curtail weapons inside the prison.

21.     Upon information and belief, MTC officials failed to conduct enough shakedowns, and when shakedowns were done, the guards would either ignore contraband or simply not report it due to the fact they were being paid by gang members.  Such actions and inactions contributed to the incident in which the Decedent was killed.

22.     In order to deal with gangs in prison, sound correctional policy mandates that prison officials institute programs to deal with gangs.  Prison officials label gangs as "Security Threat Groups" ("STG's").  Such STG programs involve the prevention, identification, and

management of gangs in prison. Upon information and belief, MTC has failed to institute any program to deal with the gang situation which exists at WCCF or has applied such measures with negligence, gross negligence and/or deliberate indifference. Such failures led to the Decedent's death.

23.     MTC was understaffed on the day Decedent was killed.  MTC has a pattern and/or practice of understaffing at WCCF.  The guards who are on duty are inadequately trained and/or supervised to handle the prison population which exists at WCCF.  MTC's actions and inactions were negligent, grossly negligent, and/or deliberately indifferent to the safety and well-being of the Decedent.

## NEGLIGENCE/GROSS NEGLIGENCE

24.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 23 hereinabove.

25.     At all times relevant herein, every Defendant had a duty to exercise ordinary care for the prisoners at WCCF, including the Decedent, Kendrick Lanell Walker.  Every Defendant breached that duty, by failing to use the ordinary care that a reasonable person would use to avoid injury to others, which led directly to Kendrick Lanell Walker's death, and injuries to Plaintiff.  The breach was so egregious as to amount to gross negligence. The Defendant was understaffed and could not send in necessary man power to control the situation and save the Decedent's life.  WCCF has a history of gang problems and violent outbreaks so much so that the inmates call the prison "The Killing Fields".  MTC knew this violent atmosphere existed at the prison yet failed to have adequate staffing in place.  MTC's Correctional Emergency Response Team (CERT) should have responded to the situation within 4 minutes according to MDOC's policies and procedures.  However, there was no CERT response or any other type of aid for the Decedent.

8

26.     Decedent's injuries, and his wrongful death, were the reasonably foreseeable outcome of Defendant's acts and omissions.  These acts and/or omissions were substantial factors in bringing about the Decedent's injuries, his wrongful death, and the accompanying damage to Plaintiff.

## NEGLIGENT AND/OR GROSSLY NEGLIGENT HIRING AND SUPERVISION

27.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 26 hereinabove.

28.     Plaintiff alleges Defendants MTC and John Does 1-100  negligently, or gross negligently, hired, supervised, and retained its employees, inter alia, by a) failing to care for and ensure the Decedent's safety while at WCCF; b) properly train, supervise, discipline, retain, hire, and/or discharge its employees agents, and/or representatives; and c) were otherwise negligent or grossly negligent in their care and treatment of the Decedent, and as a direct and proximate result, the Decedent was killed and the Plaintiff sustained the harms alleged herein.

## RESPONDEAT SUPERIOR

29.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 28 hereinabove.

30.     MTC and Defendant John Does 1-100 acted with negligence, gross negligence, and/or intentionally by opening the cell doors on May 25, 2014, or by failing to ensure the cell doors were properly secured.  At all times relevant, each Defendant owed a duty to the Decedent to ensure his safety, and the Defendants breached this duty.  The actions and inactions of Defendant John Does 1-100 led directly to the injuries suffered by the Decedent and Plaintiff. Defendants MTC and John Does 1-100 as employees are liable for their actions which were undertaken during the course and scope of their employment at MTC.

31.     MTC is also responsible for the actions and inactions alleged hereinabove against unknown Defendant John Does 1-100 which caused the damages suffered by the Decedent and Plaintiff.   Also such actions and/or inactions by the individual Defendants were committed within the course and scope of their employment with MTC.

### § 1983 CAUSES OF ACTION

32.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 31 hereinabove.

33.     The Defendants' employees knew or should have known that inmates planned to attack and kill the Decedent on May 25, 2014.   Additionally, the Defendant's employees actually witnessed inmates beating and stabbing the Decedent yet failed to render him any aid.   Finally, one or more of the Defendant's employees condoned, aided or assisted the inmates in the Decedent's attack and eventual killing.   The factual allegations alleged herein show that Defendants MTC and Doe Defendants 1-100 violated clearly established constitutional rights, including but not limited to:

a)     Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

b)     Decedent's right not to be deprived of liberty without due process of law;

c)     Decedent's right to be safe and protected from injuries while in Defendants' custody;

d)     Decedent's right to be protected by the correctional officers while under their control; and

e)     Decedent's right to be free from excessive and unreasonable force.

34.     Defendant John Does 1-100's actions were clearly not objectively reasonable.   At all times, Defendant John Does 1-100 were acting under color of state law.

35.     As a direct and foreseeable result of the Defendant John Does 1-100's actions, Plaintiff suffered damage including but not limited to, physical injuries, emotional distress, mental anguish, as well as pain and suffering.

36.     Defendant MTC, by and through Defendant John Does 1-100 in their individual and official capacities, established customs, policies and procedures which directly and proximately caused the deprivation of the Decedent's constitutional rights as alleged herein. Defendants were deliberately indifferent to the safety of the Decedent and other WCCF inmates. These policies created unconstitutional conditions of confinement.

37.     Such unwritten policies, customs and practices include but are not limited to the following:

a.     inadequate and improper training, hiring, supervision and discipline of WCCF corrections officers;

b.     inadequate and improper procedures and practices in screening, hiring, training, supervising and disciplining officers who practice, condone or use excessive force upon WCCF inmates, including the Decedent, in violation of his constitutional rights.

c.     inadequate and improper procedures, policies and practices for investigating improper activities by WCCF correctional officers either through offender complaints of misconduct or through internally-initiated complaints or investigations which permits guards to aid and abet gang members housed at WCCF:

d.     inadequate or improper procedures, policies and practices for identifying and taking appropriate action against WCCF correctional officers who are in need of re-training, corrective measure, reassignment, or other non-disciplinary actions, through a positive or early warning system designed to prevent the violation of inmates' rights.

e.     condoning and allowing WCCF correctional officers to allow inmates to fight;

f.     failing to prevent and/or investigate allegations of improper relationships between WCCF correctional officers and WCCF inmates.

g.     failing to institute proper gang management policies and procedures;

11

h.     failing to establish policies and procedures to limit the flow of illegal contraband into the facility, including but not limited to drugs, weapons, and cell phones all of which contributed to the atmosphere of violence at WCCF;

i.     Allowing inmates to compromise their cell doors and permitting the inmates to leave their cells when they are supposed to be on lock down. Such practice contributed to the atmosphere of violence which existed on the day Decedent was killed;

j.     failing to adequately staff WCCF with trained and qualified guards and allowing the prison to be understaffed; and

k.     failing to be able to respond to emergency situations like the one in which the Decedent was killed, within the time limit required by MDOC policies and procedures. Such failing is a direct result of having inadequate staffing in place among other things.

38.     Upon information and belief, the Plaintiff charges that MTC, through Defendant John Does 1-100, had prior knowledge that a fight was being planned or was sufficiently imminent, yet chose not to take any action to prevent this fight. Defendant John Does 1-100 were deliberately indifferent to the safety of the Decedent and other WCCF inmates. As a direct and foreseeable result of the actions and inactions of Defendants MTC and Doe Defendants 1-100 to take the necessary steps to prevent this fight, the Plaintiff suffered the harm alleged herein.

## PUNITIVE DAMAGES

39.     The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 38 hereinabove.

40.     The Defendants have acted in complete disregard for the safety of the Decedent by acting in a grossly negligent manner as previously described herein. The actions of the Defendants warrant punitive damages.

41.     The Defendants' actions exhibited such gross negligence and direct disregard for the safety of the Decedent. Punitive damages should be awarded against the Defendants.

Defendants' tortious actions have caused the wrongful death of the Decedent, and the Plaintiff's emotional distress and mental anguish.

### **PRAYER FOR RELIEF**

The Plaintiff requests a jury trial and seeks the following relief:

A.      Compensatory damages of, from and against the Defendants, each and severally, in amount to be determined by this Court;

B.      Punitive damages of, from and against the Defendants, in an amount to be determined by this Court;

C.      Reasonable attorney's fees and all costs of this court;

D.      Pre and post judgment interest; and

E.      Such other general and special relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the _3/1st_ day of October, 2014.

> ROBERT WALKER, Individually and as Personal Representative on Behalf of the Wrongful Death Beneficiaries of KENDRICK LANELL WALKER

> BY: _____
>        CHARLES R. MULLINS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
MERRIDA (BUDDY) COXWELL (MB# 7782)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi  39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600