# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

| | |
|---|---|
| JONATHAN LEWIS GRIFFIN, Individually and as Personal Representative on Behalf of the Wrongful Death Beneficiaries of KENDRICK LANELL WALKER | PLAINTIFF |
| v. | CIVIL ACTION NO. 5:14cv98-DCB-MTP |
| MANAGEMENT & TRAINING CORPORATION and JOHN AND JANE DOES 1-100 | DEFENDANTS |

## MTC'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Defendant Management & Training Corporation ("MTC"), by counsel and pursuant to Federal Rule of Civil Procedure 56, submits this Memorandum in Support of its Motion for Summary Judgment as follows:

## I.     INTRODUCTION

This is a tragic case of a large-scale prison fight that resulted in the death of Inmate Kendrick Walker ("Walker"). The inmates who murdered Walker have been or are currently being criminally prosecuted. Now, Walker's two brothers seek to hold MTC civilly liable for not preventing Walker's death. MTC's position is that it did everything it could under the circumstances in responding to and controlling the situation. Under the legal arguments and certain undisputed facts explained below, MTC submits summary judgment is appropriate on all claims asserted by Plaintiff. According to Plaintiff's Complaint, the claims against MTC are (1) Negligence and/or Gross Negligence, (2) Negligent and/or Grossly Negligent Hiring and Supervision, (3) Respondeat Superior, (4) various constitutional claims via § 1983, and (5)

Punitive Damages. As explained herein, MTC seeks dismissal of all claims asserted against it with prejudice.

## II.    FACTS

A.    **Undisputed Facts Regarding the Fight**

On Sunday, May 25, 2014, a fight broke out at 12:21 p.m. in the F Pod at Wilkinson County Correctional Facility ("WCCF"). (Exhibit 1, Subia Depo. I, p. 11-14).[1] The fight involved Kendrick Walker and numerous other inmates. (Exhibit 1, Subia Depo. I, p. 11-14). There is no dispute this was not a gang-related fight, but rather was caused by Walker's own behavior towards other inmates. (Exhibit 2, Subia Depo. II, p. 53-54).[2] The fighting lasted until 12:23 p.m., when Walker was able to lock himself in Cell 201 for 11 minutes. (Exhibit 1, Subia Depo. I, p. 11-14). At 12:34 p.m., the door[3] to Cell 201 was compromised, Walker exited Cell 201, and the fighting resumed for 2 minutes. (Exhibit 1, Subia Depo. I, p. 11-14). At 12:36 p.m., the fighting ceased and Walker lay motionless under the stairs. (Exhibit 1, Subia Depo. I, p. 11-14). There is no dispute Walker was deceased at that time, and remained motionless under the stairs until Major Gabe Walker, the Chief of Security at WCCF, entered F Pod. (Exhibit 3, Gabe Walker Depo., p. 27-28).

B.    **Undisputed Facts Regarding MTC's Response to the Incident**

At 12:21 p.m., or immediately when the initial fighting broke out, a code black was called by MTC employees on F Pod. (Exhibit 4, Tira Jackson Email Statement; Exhibit 5,

---

[1] All exhibits are attached to MTC's motion for summary judgment, which is being filed contemporaneously with this memorandum.

[2] The deposition of Plaintiff's expert, Richard Subia, was conducted on two separate days due to an unexpected family issue that arose during the first day of his testimony. Therefore, the transcript of the first deposition is referred to as "Subia Depo. I," and the second deposition is referred to as "Subia Depo. II."

[3] There is a factual dispute as to how the door was opened, but that factual dispute is irrelevant for purposes of this dispositive motion.

*41258211-1*                                      2

Jackson Depo., p. 53-56). Less than one minute after the fighting began, Deputy Warden Tira Jackson and Captain Ella Scott, both MTC employees, arrived at the scene. (Exhibit 4, Tira Jackson Email Statement; Exhibit 5, Jackson Depo., p. 53-56). They ordered the inmates to stop fighting, but the inmates did not comply. (Exhibit 4, Tira Jackson Email Statement; Exhibit 5, Jackson Depo., p. 53-56). They further called for the entire facility to be placed on lockdown, and for the CERT Team to be activated. (Exhibit 4, Tira Jackson Email Statement; Exhibit 5, Jackson Depo., p. 53-56). They did not enter F Pod at that time because of the mass fighting and because they did not have the needed weapons at the time to control such a large chaotic disturbance. (Exhibit 4, Tira Jackson Email Statement; Exhibit 5, Jackson Depo., p. 53-56). They were able to get one injured inmate out of F Pod and provide medical assistance to him. (Exhibit 4, Tira Jackson Email Statement; Exhibit 5, Jackson Depo., p. 53-56). Deputy Warden Jackson also ordered Lieutenant Virgil Rigdon to go to the roof of F Pod to be prepared to drop chemical agents into the pod, but he was not ordered to drop the chemical agents. (Exhibit 6, Rigdon Depo., p. 19-22).

Major Gabriel Walker, the Chief of Security at WCCF, was not at the facility at the time of the incident but was called shortly after the incident began. (Exhibit 7, Gabe Walker Statement; Exhibit 3, Gabe Walker Depo., p. 26-27). He immediately called Jaime Brown, the CERT Team commander who was also not at the facility, and told him to activate the CERT team. (Exhibit 7, Gabe Walker Statement; Exhibit 3, Gabe Walker Depo., p. 27-28). Commander Brown and Major Walker arrived at the facility at approximately 12:45 p.m., and they immediately entered F Pod armed with a 37 millimeter gun. (Exhibit 7, Gabe Walker Statement; Exhibit 3, Gabe Walker Depo., p. 27-28).

There is no dispute that – at the time of the incident – no one physically present at the facility was certified to operate the 37 millimeter gun or the pepperball gun. (Exhibit 8, Memo re 37mm and Pepperball Gun Certification). The CERT team members were the only ones certified to operate these two weapons. *Id.* Major Walker has explained that the CERT team is not required to be on site at all times but remains on call when they are off site. (Exhibit 3, Gabe Walker Depo., p. 24-25). Further, Major Walker testified that the CERT team is called when the staff on shift cannot handle an incident, which is exactly what happened here. *Id.*

### III. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if "no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Wright v. Ford Motor Co.*, 508 F.3d 263, 274 (5th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). The moving party satisfies its burden by showing an absence of "genuinely" disputed material facts, and pointing to evidence that it is entitled to a judgment. *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989). The moving party need only point out the absence of genuinely disputed material facts and "need not negate the elements of the non-movant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

To avoid summary judgment, a plaintiff "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *EMCASCO Ins. Co. v. American Intern. Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). This requires "significant probative evidence" that would allow a reasonable fact-finder to rule in favor of the non-movants on all essential claim elements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 322-23. A plaintiff cannot meet this burden simply by relying on unsubstantiated assertions, improbable

inferences, or unsupported speculation because these are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

## IV. ARGUMENT

Plaintiff's claims against MTC are (1) negligence and/or gross negligence, (2) negligent and/or grossly negligent hiring and supervision, (3) respondeat superior, (4) various constitutional claims via § 1983, and (5) punitive damages. As explained below, MTC submits that summary judgment is appropriate as to all claims.

### A. Count I – Negligence and/or Gross Negligence

Plaintiff's basic claim in Count One is that MTC breached the duty of exercising ordinary care toward Inmate Walker to prevent him from being injured by other inmates. [Dkt. No. 1, ¶ 25]. While Mississippi law has imposed "a duty upon a sheriff in this capacity as jailer to exercise ordinary and reasonable care for the preservation of the life and health of his prisoners," this duty has not been extended to supervisors at large prisons, such as the state penitentiary. *Bogard v. Cook*, 405 F. Supp. 1202, 1215 (N.D. Miss. 1975) aff'd, 586 F.2d 399 (5th Cir. 1978). *Id.* at 1216. The reason for not extending this duty is because of the much larger number of inmates housed at the state penitentiary as compared to a jail operated by a sheriff. *Id.* The *Bogard* Court noted that "it would be rare for a sheriff to have custody of more than two dozen prisoners at any time, at least half of whom would probably be pre-trial detainees rather than persons serving time pursuant to a conviction and sentence of a state court." *Id.*

Similarly, no such corresponding state law duty should be placed on MTC since WCCF is a large facility. It does not house pre-trial detainees and housed approximately 860 inmates at the time of the incident and averaged 885 inmates for the year preceding the incident. (Exhibit 9,

MDOC Compliance Monitor Documents – CONFIDENTIAL).[4] Major Walker testified that as of the date of his deposition, October 27, 2015, WCCF held 895 inmates. (Exhibit 3, Gabe Walker Depo., p. 36). There is no dispute, therefore, that WCCF is a large scale prison with a significant population and is not comparable to a small sheriff's office.

This does not mean that an injured prisoner is without recourse. Indeed, as discussed below, the United States Supreme Court has made clear that under the United States Constitution and thus § 1983, "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Consequently, the critical point is that while a constitutional duty exists to protect injured inmates, there is no corresponding state law duty founded on basic negligence principles. Therefore, summary judgment is appropriate on Count One.

### B. Count II – Negligent and/or Grossly Negligent Hiring and Supervision

Count Two is focused on MTC's alleged negligence in hiring and supervising employees. This count implicates two similar but separate legal theories of liability.

#### 1. Negligent and/or Grossly Negligent Hiring or Retention

In Mississippi, "an employer will be liable for negligent hiring or retention of his employee when an employee injures a third party if the employer knew or should have known of the employee's incompetence or unfitness." *Parmenter v. J & B Enterprises, Inc.*, 99 So. 3d 207, 217 (Miss. Ct. App. 2012) (citing *Doe v. Pontotoc County Sch. Dist.,* 957 So.2d 410, 416–17 (Miss. Ct. App. 2007)). "Relatedly, if an employer exercises due care in the hiring of its employees, that employer will not be liable for the injuries of a third party unless that party can

---

[4] This document was originally produced as confidential under the agreed protective order entered in this matter. As MTC prepared for this motion, it has decided to file this document as a regular exhibit and not seek confidential status as under a motion to seal pursuant to Local Rule 79.

prove the employer knew or should have known of the incompetence and unfitness of the employee." *Id.* This can be proven through actual or constructive notice. *Id.*

This claim fails for two reasons. First, Plaintiff has failed to identify the employees he claims were negligently hired. [Dkt. No. 1]. Plaintiff plead the identity of "John and Jane Does 1-100 who are unknown MTC officers, employees, agents, and or servants" and promised to amend the Complaint to identify them. [Dkt. No. 1, ¶ 7]. However, Plaintiff failed to make such an amendment.

Second, Plaintiff has no proof that MTC has or had knowledge of any incompetence or unfitness whatsoever by any of the employees involved in this matter prior to the incident.

For either of these two reasons, summary judgment is appropriate, and this claim should be dismissed with prejudice.

### 2. Negligent and/or Grossly Negligent Training or Supervision

A claim of negligent training and supervision is not viable when an employer admits that the employees at issue were acting in the course and scope of their employment. *Benoit v. Bates*, No. 1:08CV391-LG-RHW, 2010 WL 4637672, at *4 (S.D. Miss. Nov. 8, 2010); *See Curd v. Western Express, Inc.,* No. 1:09cv610–LG–RHW, slip op. at 3–4 (S.D.Miss. Nov. 2, 2010) (holding that plaintiffs' negligent entrustment, hiring, and training claims should be dismissed where employer admitted vicarious liability); *see also* Restatement (Second) of Torts § 317 cmt. a (1965) (providing that negligent supervision claims apply to situations in which an employee is acting outside the scope of employment, because employers are vicariously liable for the conduct of an employee acting within the course and scope of employment).[5]

---

[5] *Cameron v. Werner Enterprises, Inc.*, No. 2:13CV243-KS-JCG, 2015 WL 4393068, at *2 (S.D. Miss. July 15, 2015) (collecting cases as follows: *Littlejohn v. Werner Enters., Inc.,* No. 1:14cv44, 2015 WL 3868092, at *2 (N.D. Miss. June 23, 2015) (granting the defendant employer summary judgment on claims for negligent hiring, training, and supervision given the stipulation that the defendant employee was acting within the course and scope of his

As an initial matter, and again, Plaintiff has failed to plead – either initially or through amendment –the identities of the persons allegedly negligently supervised by MTC. For this reason alone, this claim fails and summary judgment is appropriate.

Importantly, MTC's position is that all of the employees that responded to and were involved in this incident acted within the course and scope of their employment at all relevant times. (Exhibit 10, Marjorie Brown Affidavit). MTC's only exception to this position would be if there is a finding that any of the three guards in the tower voluntarily opened the door to Cell 201 but, at this time, MTC's position is there is no genuinely disputed material fact evidencing that the same actually occurred. *Id.* Therefore, Plaintiff's state law claim for negligent hiring, supervision, and/or training must be dismissed.

### C. Count III – Respondeat Superior

Count III is set forth as "respondeat superior." As an initial matter, respondeat superior is not a distinct "cause of action under Mississippi law." *Jordan v. Premier Entm't Biloxi, LLC*, No. 1:13CV195-LG-JCG, 2014 WL 5773762, at *2, FN 2 (S.D. Miss. Nov. 6, 2014). Put differently, respondeat superior is not a stand-alone legal theory or claim. For this reason alone, summary judgment is appropriate on Count III.

Further, summary judgment is appropriate to the extent this claim is predicated on an alleged general state law "duty to the Decedent to ensure his safety." [Dkt. No. 1, ¶ 30]. As

---

employment); *Coleman v. Swift Transp. Co. of Ariz., LLC,* No. 3:13cv3, 2014 WL 3533322, at *5 (N.D.Miss. July 16, 2014) ("Although the Mississippi Supreme Court has not yet addressed whether a plaintiff can pursue negligent supervision claims against an employer who has admitted vicarious liability, the federal district courts in this state predict that it would 'find summary judgment on a claim of negligent entrustment appropriate where vicarious liability is not disputed.' "); *Lee v. Harold David Story, Inc.,* No. 3:09cv696, 2011 WL 3047500, at *1 & n. 1 (S.D.Miss. July 25, 2011) (citing numerous opinions supporting the defendant employer's argument that the plaintiff's direct liability claims were redundant and due to be dismissed since this defendant admitted it was vicariously liable for its employee's negligence); *Booker v.. Hadley,* No. 2:08cv172, 2009 WL 2225411, at *2 (S.D.Miss. July 23, 2009) (finding it appropriate under Mississippi law "to dismiss all claims of negligent entrustment and the like when the defendant concedes liability under respondeat superior")).

explained above, there is no general state law duty for prison officials of large prisons to ensure the safety of large prisoners like the one operated by MTC at WCCF. Without an underlying duty, the claim for respondeat superior must be dismissed.

Even if this claim is predicated on the conduct of the employees that allegedly opened cell doors so that fighting could continue, summary judgment is appropriate. [Dkt. No. 1, ¶ 30]. Assuming this factual allegation were in dispute (which it is not) and thus has a corresponding duty, summary judgment is still appropriate on this claim. "Under the doctrine of respondeat superior, the master is liable for the acts of his servant which are done in the course of his employment and in furtherance of the master's business." *Children's Med. Grp., P.A. v. Phillips*, 940 So. 2d 931, 935 (Miss. 2006) (citing *Sandifer Oil Co. v. Dew,* 71 So. 2d 752, 758 (Miss. 1954)). If an employee "deviates or departs from his work to accomplish some purpose of his own not connected with his employment—goes on a 'frolic of his own'—the relation of master and servant is thereby temporarily suspended," and the employer is not vicariously liable. *Id.* The *Bogard* Court noted that "[w]hile it is clear that prison administrators may, under certain circumstances be held vicariously liable for the acts of their subordinates, the subordinates' acts must be notorious and widespread to such a degree that the administrator would have actually or constructively condoned or sanctioned the acts of his underlings." *Bogard v. Cook,* 405 F. Supp. 1202, 1209-10 (N.D. Miss. 1975) aff'd, 586 F.2d 399 (5th Cir. 1978).

As an initial matter, MTC denies that any of its employees voluntarily opened Cell 201 during the subject incident, but even if it turns out that the employees did in fact open the doors (which the undisputed facts prove cannot be substantiated), those employees would be personally liable. Notably, these individuals have not been personally sued. MTC would not be vicariously liable because opening the cell doors under those circumstances would have been improper and a

deviation from the work they were assigned, hired, trained or otherwise authorized to perform. (Exhibit 10, Marjorie Brown Affidavit). Thus, as a matter of law, MTC cannot be liable for these actions.

### D. Count IV – § 1983 Constitutional Claims

Under the heading "§ 1983 Causes of Action," Plaintiff makes a number of constitutional allegations against MTC. MTC submits that all of Plaintiff's purported constitutional claims are subject to summary judgment.

There is no dispute that a private prison company is considered a state actor for constitutional purposes and may be sued under § 1983. *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460-61 (5th Cir. 2003). However, a mere claim of negligence on the part of the prison officials is not cognizable under Section 1983. *Daniels v. Williams,* 474 U.S. 327 (1986). Additionally, "[t]here is no vicarious or *respondeat superior* liability of supervisors under section 1983." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) (citing *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987)). "Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Id.* (citing *Evett v. DETNTFF,* 330 F.3d 681, 689 (5th Cir. 2003)).

Plaintiff claims that Walker had a clearly established constitutional right "to be safe and protected from injuries while in Defendants' custody" and "to be protected by the correctional officers while under their control." [Dkt. No. 1, ¶ 33]. However, research has revealed no such right specifically identified as such. Rather, the law stated below regarding the Eighth Amendment will seemingly govern this situation.

Plaintiff additionally claims that Walker had a clearly established constitutional right "to be free from excessive and unreasonable force." [Dkt. No. 1, ¶ 33]. The United States Supreme Court has said that an analysis of an excessive force claim under § 1983 "begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Generally, it will "be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct." *Id.* "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." *Id.*, see *Tennessee v. Garner*, 471 U.S. 1,7–22 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); *Whitley v. Albers,* 475 U.S. 312, 318–326 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard). Here, it would appear that Plaintiff seeks to pursue this claim under the Eighth Amendment and not the Fourth Amendment because an arrest is not involved. Again, the law governing the Eighth Amendment claim is discussed below.

Ultimately, it seems Plaintiff's Complaint sets forth two legally cognizable (on their face) constitutional claims. The first is based on cruel and unusual punishment prohibited by the Eighth Amendment. The second is based on due process under the Fourteenth Amendment. As set forth below, both claims should be dismissed with prejudice.

    **1.**    **Eighth Amendment Claim**

The United States Supreme Court has made clear that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S.

825, 833 (1994). However, every "injury suffered by one prisoner at the hands of another" does not mean that a prison official has violated the constitution. *Id.* at 834. Prison officials violate the "Eighth Amendment only when two requirements are met." *Id.* First, the deprivation alleged must be, objectively, "sufficiently serious." *Id.* Second, a prison official must have a "sufficiently culpable state of mind," which is one of "deliberate indifference" to inmate health or safety in prison condition cases. *Id.*

Here, the deprivation at issue is Walker's life, and there is no dispute he died during the fighting at issue. Thus, the first requirement is met. The second requirement of deliberate indifference is the primary focus of this claim. Despite the tragic nature of the facts, this is a significantly hefty burden for Plaintiff.

"Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it '**must amount to an intentional choice**, not merely an unintentionally negligent oversight.'" *James v. Harris Cty.*, 577 F.3d 612, 617-18 (5th Cir. 2009)(citing *Rhyne v. Henderson County,* 973 F.2d 386, 392 (5th Cir. 1992); *see also Conner v. Travis County,* 209 F.3d 794, 796 (5th Cir. 2000))(emphasis added). In one case where a prisoner killed another prisoner, the Fifth Circuit found that "there is no clearly established constitutional right for an officer to immediately intervene when an armed inmate attacks another inmate, as the officer may need to call for backup or seek to avoid her own serious injury." *Rios v. Scott*, 100 F. App'x 270, 272 (5th Cir. 2004). Similarly, the *Rios* Court held that "the supervisory officials are also entitled to qualified immunity because the [plaintiffs] have not shown that reasonable officials would know that the supervisory officials' conduct violated the Constitution." *Id.* This is because a "prison official violates the Eighth Amendment only when that official is deliberately indifferent to the safety needs of an inmate." *Id.* The *Rios* Court found there was no evidence

the "supervisory officials were deliberately indifferent to inadequate staffing, cell searches, training or potential gang conflict." *Id.*

Thus, MTC and its employees had no duty to immediately rush into F Pod to intervene in the subject incident. In fact, MTC and its employees had the right under the United States Constitution to call for backup and ensure their own safety before entering F Pod. The undisputed facts regarding MTC's response demonstrate that this is exactly what happened. As explained above, MTC's response is summarized as follows:

- Code Black was called immediately.
- Deputy Warden Jackson, Captain Scott, and others arrived at the scene quickly and ordered the inmates to stop fighting and return to their cells, but the inmates refused.
- They ordered an immediate lockdown of the facility and called for the CERT team to be activated.
- They were able to remove one injured inmate and provide him medical assistance.
- Lieutenant Rigdon was ordered to go to the roof and wait for the order to drop grenades containing chemical weapons into the Pod.
- Major Walker and CERT Commander Brown entered the Pod as soon as they arrived at the facility.

There is no dispute that these actions took place in response to the incident. Plaintiff claims MTC should have done more but, even if Plaintiff is correct, it does not necessarily follow that MTC committed constitutional violations. As explained above, deliberate indifference requires "a degree of culpability beyond mere negligence or even gross negligence; it 'must amount to an intentional choice, not merely an unintentionally negligent oversight.'" *James*, 577 F.3d at 617-18 (citations omitted). Plaintiff has no evidence whatsoever that MTC made **an intentional choice** to put Kendrick Walker's life in danger at any time relevant to this matter. Put simply, MTC did not act with deliberate indifference, and its officers responded as quickly and reasonably as possible under the circumstances of mass fighting amongst the inmates. Thus, Plaintiff's Eighth Amendment claims must be dismissed with prejudice.

### 2. Fourteenth Amendment Claim

Plaintiff also asserts a due process claim under the Fourteenth Amendment, but Plaintiff does not state whether this claim is a procedural due process claim or a substantive due process claim. Research reveals that most procedural due process claims brought by prisoners appear to be for issues involving disciplinary proceedings within the prison for acts committed while incarcerated, which is not the case here. Additionally, the Fifth Circuit has explained that convicted prisoners' rights to "constitutional essentials like medical care and safety are guaranteed by the Eight Amendment [while] pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment to ensure provision of these same basic needs." *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000). Prisoners maintain certain Fourteenth Amendment rights while incarcerated, such as freedom of speech and religion as well as procedural rights discussed above to name a few. *See, Bell v. Wolfish*, 441 U.S. 520, 545 (1979). However, Plaintiff's Complaint is void of any discussion of how the Fourteenth Amendment was violated. Moreover, there is no dispute that Walker was a convicted prisoner and not a pre-trial detainee. Thus, the Fourteenth Amendment is irrelevant to this case, and any claim based on the Fourteenth Amendment should be dismissed on summary judgment.

### E. Count V – Punitive Damages

Although Plaintiff sets forth the punitive damages claim under a separate heading, there is no separate cause of action for punitive damages in Mississippi. Because all of the underlying claims are ripe for summary judgment, Plaintiffs' request for punitive damages should also be dismissed with prejudice.

## V. CONCLUSION

For the foregoing reasons, MTC respectfully requests that this Court enter an order dismissing with prejudice all of Plaintiffs' claims, and awarding any and all other and further relief the Court deems proper.

RESPECTFULLY SUBMITTED, this the 18<u>th</u> day of March, 2016.

        **MANAGEMENT & TRAINING CORPORATION**

By:   */s/ R. Jarrad Garner*
      R. Jarrad Garner (MSB No. 99584)
      Benjamin B. Morgan (MSB No. 103663)
      ADAMS AND REESE LLP
      1018 Highland Colony Parkway, Suite 800
      Ridgeland, Mississippi 39157
      Telephone:   601-353-3234
      Facsimile:   601-355-9708
      jarrad.garner@arlaw.com
      ben.morgan@arlaw.com

**CERTIFICATE OF SERVICE**

I, R. Jarrad Garner, hereby certify that I filed a notice of service of the foregoing document with the Clerk of the Court using the ECF electronic filing system and that I provided a copy of the foregoing to all counsel of record.

This the 18th day of March, 2016.

> */s/ R. Jarrad Garner*
> R. Jarrad Garner